BIBBER-WHITE CO. v. WHITE RIVER VALLEY ELECTRIC R. CO.

(Circuit Court, D. Vermont. November 6, 1909.)

1. RECEIVERS (§ 154*)—COUNSEL—COMPENSATION.

An order appointing a receiver and authorizing him to employ and discharge in his discretion, and to fix the remuneration of such officers, attorneys, counsel, agents, and servants as he should think proper, related only to the employment of attorneys to perform some temporary service, and did not include compensation to the receiver's permanent counsel for services rendered throughout the receivership, which amount was subject to the determination of the court, in accordance with the usual practice.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 154.*]

2. RECEIVERS (§ 154*)—COUNSEL—COMPENSATION—PLACE OF EMPLOYMENT.

Where a receiver for a Vermont electric railroad employed a Boston attorney as his general counsel, and a part of the services were performed by the counsel at Boston and part in Vermont, his compensation should be fixed at the usual rate paid to Boston lawyers for the services rendered in Boston, while the ordinary value of services rendered in Vermont should be taken into consideration in passing on the question of his compensation for services rendered there.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 154.*]

3. RECEIVERS (§ 154*)—SETTLEMENT OF ESTATE—TIME—CLAIMS—INTEREST.

Where a receivership of a street railroad should have been completed within a year, but was not completed for nearly seven years, the receiver's general counsel was not entitled to interest on the compensation allowed him for more than a year.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 154.*]

4. HUSBAND AND WIFE (§ 131*)—WIFE'S SEPARATE ESTATE—NOTE—POSSESSION—OWNERSHIP—PRESUMPTION.

Where a railroad company executed notes payable to its own order, and indorsed the same, and the notes were filed as a claim against the railroad company in insolvency proceedings by a wife, acting through an attorney who appeared also for her husband, who made no claim that he was the owner of the notes, the wife's possession was sufficient to raise a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

presumption that she was the legal owner, and entitled to enforce the claim for her own benefit.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 483; Dec. Dig. § 131.*]

**5.** CORPORATIONS (§ 474*)—BONDS—ASSIGNMENT—ULTRA VIRES.

Corporate bonds of the value of $120,000, part of an authorized issue of $250,000, were issued as collateral for notes of the corporation amounting to $59,000. Thereafter the executive committee of the corporation, as authorized by its by-laws, assigned to the holders of the notes the equity in the bonds. *Held,* that such assignment was not ultra vires.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 474.*]

**6.** CORPORATIONS (§ 474*)—ASSIGNMENTS—REQUISITES—NECESSITY OF RECORD.

An assignment of a corporation's equity of redemption in certain bonds secured by a mortgage on its property, being a mere chose in action, and not an assignment of a mortgage, or a lien on land, was valid without record or filing.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 474.*]

**7.** RECEIVERS (§ 128*) — NOTES — PAYMENT—RECEIVER'S CERTIFICATES—COLLATERAL SECURITY.

A corporation, having $59,000 in notes outstanding, deposited bonds to the extent of $120,000 as collateral for the notes, and later assigned to the holders the corporation's equity of redemption in bonds. After the appointment of a receiver, he was authorized to issue receiver's certificates to take up the notes for $59,000 and the accompanying bonds, which was done. *Held,* that the transfer of receiver's certificates for the $59,000 of notes was merely a substitution of securities, and that a second lien on the bonds could not become a first lien until the receiver's certificates were paid in full.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 128.*]

**8.** RECEIVERS (§ 151*)—CLAIMS—DEATH OF CLAIMANT.

Where a claimant against a corporation in the hands of a receiver died before hearing on the claim before the master, and no executor or administrator was appointed, it could not be allowed.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 151.*]

**9.** CARRIERS (§ 13*)—REBATES—INTRASTATE SHIPMENT.

A contract between the receiver of a railroad company and a shipper for payment of a rebate on an intrastate shipment is not illegal.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 13.*]

**10.** RECEIVERS (§ 125*) — RECEIVER'S CERTIFICATES — SUBSTITUTION OF SECURITIES.

Claimant bank held a note of defendant railroad company, part of a series secured by part of an issue of outstanding bonds. After the appointment of a receiver for defendant, the court authorized the receiver to issue certificates for the notes to take up the bonds, whereupon the receiver issued to the bank a certificate for the amount due, secured by his personal note for the same amount, and later substituted his note as receiver for his personal note. *Held,* that the transaction was a mere substitution of receiver's obligations under order of the court for the outstanding bonds, and that the bank had a valid claim for the amount of the certificate.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 125.*]

**11.** APPEAL AND ERROR (§ 1078*)—REVIEW—MASTER'S REPORT—FAILURE TO DISCUSS OBJECTIONS.

Objections to a master's report, not discussed in the brief of the objecting creditors, will be presumed waived.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4256–4261; Dec. Dig. § 1078.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

12. EQUITY (§ 406*)—REFERENCE TO MASTER—REPORT—DELAY.
    A delay of more than six years after an order of reference to a master
    in proceedings for the settlement of the affairs of a railroad company in
    insolvency, before the filing of the master's report, was improper.
    [Ed. Note.—For other cases, see Equity, Dec. Dig. § 406.*]

Action by the Bibber-White Company against the White River Valley Electric Railroad Company. On objections to a master's report in insolvency proceedings. Modified and affirmed.

Elbridge R. Anderson, for Charles M. Bruce.

Hamilton & Eaton, for Rufus H. Sawyer and Mary E. Sawyer.

William B. C. Stickney, for Samuel Williams, Ernest P. Jose, and James A. Stiles, objecting creditors.

Plumley & Plumley, for Ward & Douglas.

HOLT, District Judge. This matter comes before the court upon exceptions to the report of the master, to whom a reference was ordered to determine disputed claims. The principal claims in controversy are those presented by Charles M. Bruce, for fees as attorney for the receiver, by Rufus H. Sawyer, as receiver, for his own compensation, and by Mrs. Mary E. Sawyer upon certain notes. Objections also have been filed to the allowance by the master of the claims of the town of Stockbridge, the estate of Arthur N. Cram, J. O. Robinson, the National Bank of Redemption, and Ward & Douglas.

Charles M. Bruce was attorney for the receiver. He resided and practiced law in Boston, Mass. A large part of his services were performed at Boston. This suit was brought in Vermont, and that part of his services which related to the proceedings in court were performed in Vermont. The order appointing the receiver gave the latter authority "to employ and discharge, at his discretion, and to fix the remuneration of such officers, attorneys, counsel, agents, and servants as he shall think proper." At the end of the services, just before the reference to the master, the receiver fixed the amount of his attorney's compensation at $15,000. It is claimed that, under the provision of the order quoted, the receiver had the right to fix such compensation, and that, having so fixed it, the attorney is entitled to it. I think that the provision of the order, although very broad, related to the employment of attorneys and counsel, among other agents, for some temporary separate service, and that it did not relate to the compensation of the permanent counsel for the receiver for services rendered throughout his receivership. I think that it cannot be assumed that it was the intention of the court that the amount of such compensation should not, in accordance with the usual practice, be determined by the court at the close of the receivership, and that, notwithstanding the terms of the order and the fact that the receiver fixed his attorney's compensation at $15,000, it is open to the creditors to object to that amount, and to the court to award a different amount.

There is some discussion in the master's report as to the question whether the attorney's compensation should be fixed in accordance with the standard of professional charges in Boston or in Vermont.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In my opinion, neither standard is to be applied exclusively. Mr. Bruce was a Boston lawyer. I think, in a general sense, he should be paid at the usual rate paid to Boston lawyers for the services rendered in Boston, but that the ordinary value of services rendered in Vermont should be taken into consideration in passing upon the question as to his compensation for such services. Upon the whole, I concur with the conclusion of the master that a fair valuation of the services, taking all the circumstances of the case into consideration, would be $9,000, to which should be added the sum of $52.06 for expenses, and from which should be deducted the sum of $1,000 paid on account, leaving a balance due the receiver's counsel of $8,052.06.

Interest is claimed on the amount allowed from November 1, 1902. The master reports that the receiver's services terminated before that date. On February 13, 1903, Mr. Barber was appointed master. Nearly seven years have since passed, during which time any of the parties to this proceeding could have applied to the master, and, if necessary, to the court, to expedite the proceeding, and if that had been done, in my opinion, the proceeding before the master ought to have been, and would have been, terminated within one year from the time the order of reference was made. I do not think that the fact that all the parties seem to have permitted this reference to drag on for nearly seven years is any reason for permitting the parties to draw from the estate interest on their claims for any such period. I think there should be an allowance of interest on Mr. Bruce's claim, and on all other claims allowed in this case, for one year, and for no further time.

The master has reported in favor of awarding the receiver $12,500, with interest from November 1, 1902, and $50 additional, with interest from July 1, 1904. The only objection filed is to the allowance of interest, and, in my opinion, one year's interest on these amounts should be allowed, and no more, for the reasons already stated in respect to the claim of Bruce.

Mrs. Mary E. Sawyer presents a claim for $18,900, based upon 10 notes made by the White River Valley Electric Railroad Company, payable to "the order of ourselves," and indorsed by the White River Valley Electric Railroad Company, all executed between April 27, 1899, and October 30, 1899, one of which, for $5,000, was executed and originally delivered to H. W. Burgett for services rendered in raising town subsidies and generally promoting the construction of the road. The remaining nine notes were issued for cash advanced to the road by Rufus H. Sawyer, the husband of Mrs. Mary E. Sawyer. There is considerable controversy in the evidence as to whether the money advanced by Mr. Sawyer, aggregating $13,900, was the money of Mrs. Sawyer or Mr. Sawyer. The master has reported that it belonged to Mr. Sawyer. The master also reports that, on the hearing before him, it was stated by Mr. Hamilton, who appeared for Mrs. Sawyer, that the right of recovery on the $5,000 note given to Burgett was in H. W. Burgett, and Mr. Hamilton appeared for Burgett before the master. The fact that Mrs. Sawyer produces these notes upon the hearing, and is in possession of them, raises the presumption

that she is the legal owner of the notes, and entitled to enforce them, and the fact that Mr. Sawyer, Mrs. Sawyer, and Mr. Burgett appeared upon the reference by the same counsel, and made no objection to Mrs. Sawyer's enforcing whatever rights the owner of said notes is entitled to, enables Mrs. Sawyer, in my opinion, to enforce in this proceeding whatever rights the owner of these notes has. It is not controverted in this case, so far as I am aware, that these notes are valid obligations of the railroad company. The counsel for Mrs. Sawyer claims that the said notes for $18,900 were secured by a lien on the property of the railroad company, which entitles such notes to be paid before the receiver's certificates issued in this case are paid.

The facts upon which this claim is based are these: Prior to October 30, 1899, the railroad company had authorized an issue of bonds to the amount of $250,000, secured by a mortgage to the American Loan & Trust Company of Boston as trustee. This mortgage covered the entire property of the railroad company. Of these bonds, $120,000 had been issued, and were held as collateral for notes of the railroad company previously issued, amounting to $59,000. On October 30, 1899, the date when the last of the notes held by Mrs. Sawyer was issued, the railroad company, by its executive committee, executed an instrument·whereby it assigned to the holder or holders of said notes the equity in said bonds for $120,000. After the receiver's appointment, he was authorized by an order of the court to issue receiver's certificates to the amount of $59,000, and with them to take up said notes for $59,000, and the bonds for $120,000 accompanying them as collateral security. This was done. Thereafter an order was made in this proceeding for a sale of the railroad property, and an application was made to the American Loan & Trust Company, trustee under said mortgage, to discharge the mortgage. The holders of the Sawyer notes had previously notified the trustee of said assignment of the equity in said bonds for $120,000, and had filed with said trustee an objection in writing against the discharge of the mortgage, and the trustee thereupon declined to discharge the mortgage without the assent of the holders of the Sawyer notes. It was thereupon agreed between the parties, through their counsel duly authorized, that the proceeds of the sale of the railroad should be "subject to the same legal rights and equities that the property is now under, if any, by reason of the alleged assignment by the railroad company of the equity in said bonds."

Thereupon the mortgage was discharged, and the railroad property subsequently sold, and the counsel for Mrs. Sawyer claims that by said assignment she had a lien on the equity in the bonds for $120,000, after the payment of the notes for $59,000, which those bonds were held to secure; that those notes were paid by the receiver's certificates; that thereupon, under the assignment, the holders of the Sawyer notes became holders of a first lien on the bonds secured by the mortgage; and that therefore Mrs. Sawyer now, by the terms of the stipulation under which the mortgage was discharged, has a first lien on the proceeds of the sale of the railroad property. The counsel for the objectors claims, in the first place, that the assignment of the equity of

redemption was void because it was ultra vires, was beyond the authority of the executive committee, and was not recorded as required by the law of Vermont. In my opinion, the assignment was not ultra vires; the executive committee had the power to execute it under the by-laws; and, not being an assignment of a mortgage or lien on land, but of a so-called equity in bonds, which are merely choses in action, it did not come within the terms of the recording or filing acts of Vermont, and was an entirely valid assignment.

The real question in the case is as to the effect of the transfer of the receiver's certificates for $59,000 for the notes of the railroad company outstanding for that amount. The counsel for Mrs. Sawyer claims that by that transaction the notes were paid, and the lien of the note holders on the bonds as collateral security terminated, and that thereupon the lien under the assignment of the equity in the bonds, which had theretofore been a second lien, became immediately a first lien. But, in my opinion, the issuing of the receiver's certificates was a mere substitution of one security for another, and the lien on the property created by the issuance of the receiver's certificates took the place of the lien on the property created by the mortgage, so that the second lien on the bonds, and consequently upon the property covered by the mortgage given to secure the bonds, could not become a first lien until the receiver's certificates, which were substantially a mere substituted security for the bonds held as collateral, should be paid in full. When those certificates are paid in full, if anything remains from the purchase price of the road, I think that Mrs. Sawyer has a valid lien upon it for the payment of her notes, and that, if the proceeds of the sale of the road are all exhausted by the payment of the expenses of the receivership and the receiver's certificates, Mrs. Sawyer, although, in my opinion, she holds a perfectly valid claim for the $18,900 represented by the notes, has nothing but a claim against the insolvent corporation.

Objection is filed to the claim of the town of Stockbridge; but as this objection is not referred to in the brief filed on behalf of the objecting creditors, I assume that it is waived.

Objection is filed to the claim of the Arthur N. Cram estate of $45.66. Arthur N. Cram died before the hearing before the master, and no executor or administrator or legal representative of his estate has been appointed. The claim was presented by an attorney whom Mr. Cram, in his lifetime, had retained in respect to it. In my opinion, any adjudication upon this claim, under these circumstances, would not be a bar to another claim by the representative of the estate when appointed. The claim, therefore, should be disallowed.

The claim of J. O. Robinson for $52 is objected to. This claim is for a rebate on lumber, agreed to be paid by the receiver to Robinson if Robinson would ship lumber over the road operated by the receiver. The claim was objected to on the ground that the receiver had no right to make such a contract. The shipment here appears to have been between Brandon, Vt., and Rochester, Vt. It does not appear that there is any law of Vermont making the giving of rebates on shipments between points within that state illegal, and in the absence of such proof

I think that the objection to the claim should be overruled, and the claim allowed.

Objection is filed to the claim of the National Bank of Redemption. This claim is upon a note, signed by Rufus H. Sawyer as receiver, dated March 21, 1900, given to the National Bank of Redemption, for $5,098.33, with a receiver's certificate of the same date for the same amount; the note being collateral to the certificate. At the time of the receiver's appointment, the National Bank of Redemption held a $5,000 note of the railroad company, secured by bonds of the railroad company for $10,000. This note was part of the $59,000 of notes, secured by $120,000 of bonds outstanding. When the court authorized the receiver to issue the certificates for $59,000, in order to take up the bonds for $120,000, the receiver issued to the bank the certificate in question, secured by his own personal note for the same amount. He subsequently substituted his note as receiver for his personal note. The objection is made that the receiver had no authority to issue such note as receiver, as there was no consideration for it. In my opinion, this transaction was a mere substitution of receiver's obligations, under the order of the court, for the outstanding bonds, and the National Bank of Redemption has a valid claim for the amount of the certificate, and the objection to such claim should be overruled, and the claim allowed.

Objections were filed to the first, second, and third items of the claim of Ward & Douglas. The objection to the third item is not discussed in the brief filed by the objecting creditors, and I therefore assume that it is waived. Ward & Douglas were contractors who assisted in building the railroad. I have examined the questions involved, and, without discussing the evidence in detail, I concur with the master in holding that their claims are just, and should be allowed, and that the objections to them should be overruled.

I am asked by the master to fix the amount of his compensation. He has not given any intimation of the amount which he considers proper, and it is difficult, under the circumstances, to determine such amount. It is apparent that he has done a large amount of work in the case. A great many claims were presented and passed upon, some of which presented questions of considerable difficulty. The report is painstaking and elaborate, and in all essential respects entirely satisfactory. There is one thing, however, to which I wish to refer, and that is the dilatoriness with which this work has been done. More than six years passed, after the order of reference, before the report was filed. Such delay is unjust to creditors, and is without justification, and the primary responsibility for it is upon the master. I deem in the duty of this court to express its strong disapproval of such procrastination. Under all the circumstances, my best judgment is that a reasonable compensation to the master for his services will be $3,500, and I fix his allowance at that amount.

The master's report, except as modified by this opinion, is confirmed in all respects. The decree to be entered hereon should be settled on notice to all the parties who have appeared.